FILED
United States Court of Appeals
Tenth Circuit

February 3, 2017

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENCH CIRCUIT

UNITED STATES OF AMERICA,

> Plaintiff-Appellee,

v.

KELVIN L. DICKERSON,

> Defendant-Appellant.

No. 14-2223
(D.C. No. 1:13-CR-03901-MCA-1)
(D.N.M.)

## ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **MATHESON**, Circuit Judges.

Defendant-Appellant Kelvin Dickerson appeals from the district court's written judgment sentencing him to 121 months' imprisonment and three years of supervised release, and ordering him to pay restitution in the amount of $9,798.60. Exercising jurisdiction under 28 U.S.C. § 1291, with the exception of Mr. Dickerson's challenge regarding the restitution amount specified in the written judgment, we **affirm** Mr. Dickerson's sentence. As to that restitution

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

amount, we **reverse** and **remand** with instructions for the district court to enter an amended judgment ordering restitution in the amount of $8,424.60.

## I

During the summer of 2013, Mr. Dickerson robbed seven individuals as they attempted to make deposits for their employers at banks throughout Albuquerque, New Mexico. Applying various amounts of force, Mr. Dickerson obtained money from the possession of each victim and fled the scene in a car driven by his co-defendant, Dominique Dickens. Police apprehended Mr. Dickerson after his seventh robbery, on September 5, 2013.

The grand jury returned an eight-count indictment, charging Mr. Dickerson with one count of conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a) (Count 1), two counts of robbery in violation of § 1951(a) (Counts 2 and 5), and five counts of robbery and aiding and abetting (Counts 3, 4, 6, 7, and 8), in violation of 18 U.S.C. §§ 2 and 1951(a). Mr. Dickerson pleaded guilty to all eight counts.

The presentence investigation report ("PSR") calculated a recommended sentencing range under the U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") of 151 to 188 months' imprisonment and recommended restitution in the amount of $8,424.60, based on its calculation of actual loss to the

2

individual victims and the employers whose deposits were stolen.[1] To calculate the recommended Guidelines range, the PSR created seven sentencing groups. *See* U.S.S.G. § 3D1.2 ("All counts involving substantially the same harm shall be grouped together into a single Group."). The PSR created seven sentencing groups based on Dickerson's charges. Group 1 consisted of Count 1 (conspiracy to commit robbery) and Count 2 (robbery). The remaining six counts were grouped individually—that is, Count 3 became Group 2, Count 4 became Group 3, and so on.

The PSR then calculated the combined offense level for the sentencing groups pursuant to U.S.S.G. § 3D1.4. The combined offense level is determined by calculating the adjusted offense level for each group and "taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in [§ 3D1.4]." *See* U.S.S.G. § 3D1.4. The PSR assigned each sentencing group a base offense level of twenty, which is the base offense level for a violation of 18 U.S.C. § 1951. *See* U.S.S.G. § 2B3.1. The PSR then applied various sentencing enhancements to each sentencing group,[2] and identified Group 5 as having the highest adjusted offense level at

---

[1]     The U.S. Probation Office appears to have applied the 2013 version of the Guidelines. The parties do not challenge this decision on appeal. Therefore, we reference that version of the Guidelines herein.

[2]     More specifically, the PSR applied the following enhancements to each group: Group 1 received two levels for property stolen from a financial institution pursuant to U.S.S.G. § 2B3.1(b)(1) and two levels for threat of death pursuant

3

thirty. The PSR then increased that offense level—i.e., thirty—by five levels based on the adjusted offense levels of the other six groups pursuant to § 3D1.4, totaling a combined offense level of thirty-five. Finally, the PSR subtracted three levels from the combined offense level for acceptance of responsibility under § 3E1.1, for a total offense level of thirty-two. Based on the total offense level of thirty-two, and a criminal history category of III, the PSR calculated a Guidelines range of 151 to 188 months' imprisonment.

At the sentencing hearing, the district court "adopt[ed] the proposed findings set forth in the [PSR] with the exception [of the] two-level enhancement for threat of death" that the PSR had applied to Groups 1, 2, and 3. R., Vol. III, at 11 (Sentencing Hr'g Tr., dated Dec. 9, 2014). The court then stated that the Guidelines range was 121 to 151 months' imprisonment. The court pronounced a sentence of 121 months' imprisonment and three years of supervised release, and

---

to U.S.S.G. § 2B3.1(b)(2)(F); Group 2 received two levels for property stolen from a financial institution, two levels for threat of death, two levels for bodily injury pursuant to U.S.S.G. § 2B3.1(b)(3)(A), two levels for physical restraint of victim pursuant to U.S.S.G. § 2B3.1(b)(4)(B), and one level for loss exceeding $10,000; Group 3 received two levels for property stolen from a financial institution, two levels for threat of death, and two levels for physical restraint of victim; Group 4 received three levels for brandishing a dangerous weapon pursuant to U.S.S.G. § 2B3.1(b)(2)(E) and two levels for physical restraint of victim; Group 5 received two levels for property stolen from a financial institution, four levels for use of a dangerous weapon pursuant to U.S.S.G. § 2B3.1(b)(2)(D), two levels for bodily injury, and two levels for physical restraint of victim; Group 6 received four levels for use of a dangerous weapon, two levels for bodily injury, and two levels for physical restraint of victim; and Group 7 received four levels for use of a dangerous weapon, two levels for bodily injury, and two levels for physical restraint of victim.

ordered Mr. Dickerson to pay restitution in the amount of $8,424.60.

The district court entered a written judgment against Mr. Dickerson on December 15, 2014. The written judgment differed from the sentence pronounced from the bench, however, in one material respect: it ordered restitution in the amount of $9,798.60, rather than $8,424.60. The remainder of the judgment reflected the terms orally pronounced at the sentencing hearing: i.e, 121 months' imprisonment and three years of supervised release.

Mr. Dickerson filed a timely appeal, challenging the amount of the written restitution order, and the procedural and substantive reasonableness of his prison sentence.

## II

Mr. Dickerson first challenges the restitution amount ordered in the written judgment. At the sentencing hearing, the district court ordered Mr. Dickerson to pay $8,424.60 in restitution, but in its written judgment the district court ordered Mr. Dickerson to pay restitution in the amount of $9,798.60. On appeal, the government concedes that the amount of restitution ordered at the sentencing hearing—that is, $8,424.60—controls. We agree. *See United States v. Barwig*, 568 F.3d 852, 855 (10th Cir. 2012) ("It is undisputed that 'an oral pronouncement of sentence from the bench controls over . . . written language.'" (quoting *United States v. Marquez*, 337 F.3d 1203, 1207 n.1 (10th Cir. 2003))); *accord United States v. Ullman*, 788 F.3d 1260, 1264 (10th Cir. 2015). Accordingly, we reverse

5

and remand to the district court with instructions to enter an amended judgment reflecting the restitution amount pronounced at the sentencing hearing—that is, $8,424.60.

## III

Mr. Dickerson challenges the procedural and substantive reasonableness of the district court's 121-month prison sentence.  We reject these challenges.

## A

"Reasonableness review is a two-step process comprising a procedural and a substantive component."  *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008).  "We 'must first ensure that the district court committed no significant procedural error . . . .'  If the district court's decision is 'procedurally sound,' we 'then consider the substantive reasonableness of the sentence imposed.'"  *United States v. Lucero*, 747 F.3d 1242, 1246 (10th Cir. 2014) (citation omitted) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Procedural reasonableness concerns "the manner in which the sentence was calculated."  *United States v. Sanchez-Leon*, 764 F.3d 1248, 1261 (10th Cir. 2014) (quoting *United States v. Masek*, 588 F.3d 1283, 1290 (10th Cir. 2009)).  "Procedural error includes 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any

6

deviation from the Guidelines range.'" *Id.* (quoting *Gall*, 552 U.S. at 51).

Where a defendant preserves his or her procedural challenge in the trial court, we generally review the procedural reasonableness of that defendant's sentence using the familiar abuse-of-discretion standard of review, "under which we review de novo the district court's legal conclusions regarding the guidelines and review its factual findings for clear error," *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) (alteration in original); *accord Lucero*, 747 F.3d at 1246.

"The party challenging the sentence 'bears the initial burden of showing that the district court' erred.'" *Sanchez-Leon*, 764 F.3d at 1261 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). "If we find a procedural error, 'resentencing is required only if the error was not harmless.'" *Id.* (quoting *United States v. Cerno*, 529 F.3d 926, 939 (10th Cir. 2008)).

Substantive reasonableness, on the other hand, concerns "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quoting *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008)). We review a sentence for substantive reasonableness under the abuse-of-discretion standard and give "substantial deference to district courts." *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009).

7

## B

We first turn to Mr. Dickerson's procedural challenges to his prison sentence. He argues that the district court erred in applying "four types of sentencing enhancements and [in calculating] restitution" because the relevant evidence in the record is unreliable and, even if reliable, it is insufficient to support the enhancements and restitution amounts. Aplt.'s Opening Br. at 18. Additionally, he argues that the district court failed to make findings as to disputed issues of fact and erred in relying on these disputed facts to increase his sentence.

## 1

We first address Mr. Dickerson's challenge to the reliability of the evidence in the record to support the sentencing enhancements and restitution amount. Mr. Dickerson argues that the only evidence in the record that supports his enhancements was "hearsay information, most of which was taken from police reports." Aplt.'s Opening Br. at 19. He complains that the "probation officer apparently conducted no in-person interviews and consequently did not observe the demeanor of any victim or any other person involved in this case," and that "[n]o medical reports substantiated the claimed injuries and no business reports substantiated the claimed loss amounts." *Id.* at 20.

## a

Where an evidentiary reliability argument is properly preserved for our

consideration, "[w]e review for clear error a district court's assessment of the reliability of evidence supporting a sentencing enhancement." *United States v. Martinez*, 824 F.3d 1256, 1261 (10th Cir. 2016); *see Martinez-Jimenez*, 464 F.3d 1205, 1209–10 (10th Cir. 2006) ("We . . . conclude that the district court did not clearly err in finding that the evidence establishing [the defendant's] prior conviction was sufficiently reliable."). Although Mr. Dickerson objected to the accuracy of certain facts contained in the PSR and noted that these "objections remain" at the sentencing hearing, R., Vol. III, at 2, he never made a specific hearsay challenge to the district court's reliance on the evidence contained in the PSR. Accordingly, we deem his hearsay-reliability challenge forfeited and subject, at most, to rigorous plain-error review. *See, e.g.*, *Gantt*, 679 F.3d at 1246 ("If, however, Defendant did not preserve the procedural challenge below, we review only for plain error."); *United States v. Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008) ("As a general rule, when a defendant fails to preserve an objection to the procedural reasonableness of his sentence, we review only for plain error."). However, because Mr. Dickerson does not even attempt to make a hearsay-reliability argument under the plain-error standard, we may decline to consider the argument at all and treat it as effectively waived. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to . . . argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

9

**b**

Even were we to give Mr. Dickerson the benefit of plain-error review, his hearsay-reliability argument would fail. "We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007); *accord United States v. Pursley*, 577 F.3d 1204, 1233 (10th Cir. 2009). Mr. Dickerson bears the burden to establish each of these factors. *See United States v. Crowe*, 735 F.3d 1229, 1242 (10th Cir. 2013) ("The plain error standard presents a heavy burden for an appellant, one which is not often satisfied." (quoting *Romero*, 491 F.3d at 1178)); *see also United States v. Kieffer*, 681 F.3d 1143, 1172 (10th Cir. 2012) ("Both parties agree Defendant did not object to this condition of supervised release before the district court, so he has the burden of establishing plain error."). Mr. Dickerson "cannot establish that such [alleged hearsay-reliability] error is plain—that is, obvious and clear." *United States v. Wardell*, 591 F.3d 1279, 1298 (10th Cir. 2009); *United States v. Duran*, 133 F.3d 1324, 1330 (10th Cir. 1998) ("An error . . . is 'plain' if it is obvious or clear, i.e., if it [is] contrary to well-settled law."). In other words, even if the district court erred in relying on unreliable hearsay in imposing the challenged sentencing enhancements and the restitution amount, we cannot conclude that any such error is clear or obvious.

10

"[S]entencing courts have broad discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151 (1997) (per curiam) (citing 18 U.S.C. § 3661). "District courts are not strictly bound by the Federal Rules of Evidence at sentencing hearings." *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013); *see* U.S.S.G. § 6A1.3, cmt. ("In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial." (citation omitted)). "[H]earsay statements may be considered at sentencing if they bear some minimal indicia of reliability." *Ruby*, 706 F.3d at 1229 (quoting *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012)). "This reliability floor is a requirement of due process" and "[c]orroborating evidence is often key to determining whether a statement is sufficiently reliable." *Id*.

The evidence available to the district court in this case did not clearly or obviously lack the requisite minimal indicia of reliability to support the sentencing enhancements. The district court relied on information set forth in the PSR and "derived from investigative reports prepared by the Albuquerque Police Department." *See* R., Vol. II, at 4 (further noting that the investigative reports are "contained in the discovery material provided by the United States Attorney's Office."). In *Ruby*, we found no plain error where a district court similarly relied on statements contained in a Petition and Violation Report that were derived from police reports. 706 F.3d at 1229; *see also United States v. McBrayer*, 546 F.

11

App'x 803, 805 (10th Cir. 2013) ("Of course, the district court could consider the police reports during sentencing, as hearsay evidence may be considered if it bears a minimal indicia of reliability."); *United States v. West*, 2000 WL 807283, at \*4 (10th Cir. June 23, 2000) (unpublished table decision) (affirming application of sentencing enhancement where district court relied on police report to justify enhancement).

On appeal, Mr. Dickerson relies chiefly on *United States v. Fennell*, 65 F.3d 812 (10th Cir. 1995). There the defendant pleaded guilty to possession of an automatic machine gun, and the district court found by a preponderance of the evidence that he had fired his machine gun at his girlfriend, an act which qualified him for a four-level enhancement under the Guidelines. *Id.* at 813. The only record evidence supporting the enhancement—that is, the only evidence that he fired the machine gun at his girlfriend—was the defendant's girlfriend's unsworn telephone account to a testifying probation officer. *Id.* Finding this hearsay evidence unreliable, we reversed the enhancement. *Id.* at 814.

We emphasized that the testifying officer had no opportunity to observe the demeanor of the girlfriend and that "no other evidence . . . corroborate[d] the account given the preparing officer." *Id.* at 813. Moreover, we explained that "[t]he government did not bother to file the arrest report or even to summarize its contents"; therefore, we were "unable to determine if the girlfriend's contemporaneous statements to the state police support[ed] the story given the

12

preparing officer." *Id.* at 813 n.2.  We also noted that Oklahoma authorities had initially charged the defendant with a misdemeanor, rather than a felony.  *Id.* "We took this as evidence that felonious intent to injure was lacking—meaning that [the defendant] hadn't tried to shoot his girlfriend with the machine gun." *Martinez*, 824 F.3d at 1262 (discussing *Fennell*, 65 F.3d at 813).  We thus concluded that the initial misdemeanor charge "tend[ed] to undermine, rather than buttress, confidence in the girlfriend's hearsay statements." *Fennell*, 65 F.3d at 813.

Here, the evidence in the record was more reliable than that available to support the enhancement in *Fennell*.  The PSR at least summarized the contents of the police reports, as well as the video recordings of the robberies, and the government disclosed the police reports during discovery.  Moreover, Mr. Dickerson points to no significant inconsistencies among the contents of the police reports, the video recordings, and the PSR, whereas in *Fennell*, the initial misdemeanor charge tended to contradict the girlfriend's statements.

To be sure, the probation officer in this case conducted a phone interview of one victim, known as H.G.,[3] about a year after the robbery.  H.G. gave an

---

[3] Throughout this proceeding—commencing with the indictment—the government has identified the individual victims of Mr. Dickerson's offenses by their initials, *cf.* 18 U.S.C. § 3771(a)(2) (noting that "[a] crime victim" has "[t]he right to treated . . . with respect for the victim's . . . privacy"); Mr. Dickerson and the PSR have adhered to this practice.  And so do we.

unsworn account of her injuries, which the probation officer summarized in the PSR. Mr. Dickerson likens H.G.'s statements to the girlfriend's statements in *Fennell*, which we deemed unreliable. In *Fennell*, however, we noted that the girlfriend may have had a reason to lie based on her previous relationship with the defendant. Here, Mr. Dickerson has made no assertion that H.G. had a dishonest motive, and no such motive is apparent to us. In fact, the PSR indicates that H.G. is not seeking restitution or other compensation from Mr. Dickerson, so H.G. would not personally benefit from exaggerating her injuries to the probation officer. Moreover, nothing in the record, including her initial statements to the police, undermines the statements H.G. made over the phone. And Mr. Dickerson has made no arguments to this effect.

In sum, we conclude that, even assuming that the district court erred in considering unreliable hearsay in imposing its sentencing enhancements and determining the restitution amount—which seems doubtful in light of the foregoing analysis—Mr. Dickerson has not demonstrated that any such error is clear or obvious. Accordingly, he has not carried his burden under the rigorous plain-error standard.

## 2

We now turn to Mr. Dickerson's argument that the record contained insufficient evidence to support various sentencing enhancements and the restitution amount. Specifically, Mr. Dickerson contends that the record

14

contained insufficient evidence to support the restitution order and the imposition of enhancements for bodily injury, physical restraint, brandishing a dangerous weapon, use of a dangerous weapon, and loss exceeding $10,000.  A district court's factual findings supporting sentencing enhancements and restitution amounts are reviewed for clear error.  *See, e.g.*, *United States v. Mejia-Canales*, 467 F.3d 1280, 1283 (10th Cir. 2006) ("[W]e review the district court's factual finding of bodily injury for clear error."); *United States v. Burt*, 134 F.3d 997, 999 (10th Cir. 1998) ("We begin with the first prong of the [Guidelines] section 3B1.3 inquiry: whether Defendant possessed special skills within the meaning of the guideline.  We review the district court's factual findings for clear error . . . ."); *see also United States v. Aranda-Flores*, 450 F.3d 1141, 1144 (10th Cir. 2006) ("We review for clear error the district court's factual findings regarding sentencing and review de novo its legal interpretation of the sentencing guidelines.").  As explained below, we conclude that the district court did not err in applying the disputed sentencing enhancements and calculating the restitution amount, based on the evidence in the record.

**a**

We first address Mr. Dickerson's challenge to the dangerous-weapon enhancements applied to Groups 4, 5, 6, and 7.  The district court added three levels to Group 4 pursuant to U.S.S.G. § 2B3.1(b)(2)(E) (punishing the brandishing or possession of a dangerous weapon), based on the PSR's finding

15

that Mr. Dickerson shoved a "hard object in [M.P.S.'s] stomach in a manner that created the impression that the object was a dangerous weapon." R., Vol. II, at 17. And the court added four levels to Groups 5, 6, and 7 under § 2B3.1(b)(2)(D) (punishing the use of a dangerous weapon other than simply brandishing or possessing it), for using a taser to accomplish the robberies of H.G., D.G., and J.H., respectively. Mr. Dickerson contests whether, on this record, a "hard object" or taser constitutes a "dangerous weapon."

Specifically, the Guidelines provide: "if a dangerous weapon was otherwise used, increase by 4 levels; . . . if a dangerous weapon was brandished, or possessed, increase by 3 levels." U.S.S.G. § 2B3.1(b)(2)(D), (E). The Guidelines define "dangerous weapon" as:

> (i) an instrument capable of inflicting death or serious bodily injury, or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument . . . .

U.S.S.G. § 1B1.1, cmt. n.1(D).

After the briefs were filed in this case, our circuit determined that a taser is a dangerous weapon as a matter of law in *United States v. Quiver*, 805 F.3d 1269 (10th Cir. 2015). Specifically, we held that "a Taser—even in drive-stun mode—is a dangerous weapon." *Id.* at 1272. We reasoned that "[i]n either drive-stun or probe mode, a Taser is 'capable of inflicting . . . serious bodily

16

injury,' which is defined as 'injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.'" *Id.* (quoting U.S.S.G. § 1B1.1, cmt. n.1(D), (L)).

In light of *Quiver*, we reject Mr. Dickerson's challenge to the four-level dangerous-weapon enhancements applied to Groups 5, 6, and 7. At oral argument, Mr. Dickerson conceded as much—specifically, he acknowledged that our decision in *Quiver* killed his challenges to the four-level dangerous-weapon enhancements applied to Groups 5, 6, and 7. However, he insists that the three-level dangerous-weapon enhancement applied to Group 4 should be reversed. *See* Oral Arg. at 6:21–6:25. In explaining the application of the enhancement to Group 4, the PSR stated that "Mr. Dickerson placed a hard object in the victim's stomach in a manner that created the impression that the object was a dangerous weapon. Therefore a 3 level enhancement is warranted." R., Vol. II, at 17.

Mr. Dickerson objected to this enhancement in the district court, arguing that "[a]n unidentified hard object . . . is not a dangerous weapon." R., Vol. I, at 35 (Def.'s Sentencing Mem., filed Oct. 26, 2014). But, as stated above, the Guidelines define "dangerous weapon" as, *inter alia*, "an object that . . . the defendant . . . in a manner that created the impression that the object was [an instrument capable of inflicting death or serious bodily injury]." U.S.S.G. §

17

1B1.1, cmt. n.1(D). Thus, a hard object does not have to be a dangerous weapon for this enhancement to apply; rather, an object need only be "used . . . in a manner that created the impression that the object was a dangerous weapon." *Id.*

Here, Mr. Dickerson's altercation with M.P.S. could certainly give the impression that he was committing the quintessential "stick 'em up" robbery; that is, by shoving a hard object into M.P.S.'s stomach and demanding money, Mr. Dickerson created the impression that the object was a dangerous weapon that he would use to inflict serious bodily injury if M.P.S. refused to comply with his demand. Mr. Dickerson's briefing offers no legal authority or arguments to the contrary. We therefore find no clear error in the district court's application of the three-level dangerous-weapon enhancement to Group 4.

**b**

Next, Mr. Dickerson challenges the application of the two-level enhancement for bodily injury pursuant to U.S.S.G. § 2B3.1(b)(3)(A) to Groups 2, 5, 6, and 7. According to the Guidelines, bodily injury is "any significant injury; e.g., an injury that is painful and obvious, or is a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, cmt. n.1(B). "To be 'significant' an injury need not interfere completely with the injured person's life but cannot be wholly trivial and, while it need not last for months or years, must last for some meaningful period." *United States v. Brown*, 200 F.3d 700, 709 (10th Cir. 1999) (quoting *United States v. Perkins*, 123 F.3d 1324, 1326 (10th Cir. 1997));

18

*accord Mejia-Canales*, 467 F.3d at 1282. "Visible injuries such as bumps, bruises, and redness or swelling are sufficient to constitute 'bodily injury.'" *Brown*, 200 F.3d at 709 (finding bodily injury where "victim sustained bleeding and a severe headache from the 'half a dozen' blows he received, as well as swelling, bruises, cuts and lumps on his face"); *see Perkins*, 132 F.3d at 1326 (affirming the application of the bodily-injury enhancement where the victim sustained a small laceration and bruising, and suffered neck and shoulder pain causing him to seek chiropractic treatment). In determining whether bodily injury occurred for purposes of the two-level enhancement, the focus of the inquiry is on the victim's injury, not on the defendant's conduct. *United States v. Egbert*, 562 F.3d 1092, 1102 (10th Cir. 2009).

Mr. Dickerson's challenges rely heavily on our decision in *Mejia-Canales*, *supra*. There, we reversed a bodily-injury enhancement where the victim sustained "a minor head injury and a small oral cut." *Mejia-Canales*, 467 F.3d at 1283–84. We noted that the head injury was not "necessarily painful or obvious," as it "consisted only of a red mark—without any reported swelling, bleeding, or bruising," and "the record . . . contain[ed] no evidence regarding the painfulness or duration of this injury." *Id.* As for the oral laceration, the district court took judicial notice of the fact that "oral injuries do not heal quickly," but we disagreed, noting that some oral injuries are "lasting and some fleeting, some painful and some scarcely so." *Id.* at 1284. We disapproved of the district

19

court's reliance on the PSR's "cursory description of a 'small laceration' and two photographs of the officer's mouth, which [were] of such poor quality that they could lend no support to a . . . finding" of bodily injury. *Id.* at 1285. In sum, we held that the red mark and oral laceration did not rise to the level of bodily injuries under the Guidelines:

> In every reported case where a "bodily injury" enhancement has been upheld against a challenge based on the significance of the injury or the sufficiency of the evidence presented, the record before the district court demonstrated injuries that were more severe than those here, were painful and lasting, or were of a type for which medical treatment would ordinarily be sought.

*Id.* at 1282 (collecting cases).

In Mr. Dickerson's view, the injuries in this case are similar to the red mark and oral cut in *Mejia-Canales.* We disagree. It was not clear error for the district court to conclude that the injuries here were more significant than those in *Mejia-Canales*, and sufficient for the bodily-injury enhancement.

Mr. Dickerson first challenges the application of the bodily-injury enhancement to Group 2, which corresponds to the robbery of victim C.P. According to the PSR, Mr. Dickerson threw C.P. to the ground in an apparent headlock, and pinned her down with his knees on her back. The police officer who responded to the crime scene observed that C.P. had several scratches and redness that resulted from her being shoved to the ground.

We conclude that the district court did not clearly err in finding that these

20

injuries are sufficient to constitute bodily injury for purposes of the two-level enhancement. First, the injury manifested itself as scratches and redness and we have explicitly stated that "[v]isible injuries such as . . . redness" and presumably scratches "are sufficient to constitute 'bodily injury.'" *Brown*, 200 F.3d at 709.

Second, the PSR states that the officers observed the scratches and redness on C.P.'s person which suggests that the injury was obvious, an element of the Guidelines' definition of bodily injury that was lacking in the injuries in *Mejia-Canales*. It is not clear error for the district court to conclude that visible scratches, which break the skin, are more significant than the red mark left on the victim in *Mejia-Canales*. Moreover, there is no indication in the record that the district court rested its bodily-injury finding on the erroneous notion that *all* scratches constitute bodily injury under the Guidelines. In *Mejia-Canales*, the district court took judicial notice that *all* injuries to the mouth are lasting, and we found clearly erroneous its finding of bodily injury on that basis, because not all oral injuries will constitute bodily injury. Here, the district court's finding relates only to the particular scratches and redness suffered by C.P., and we cannot say that this finding is clearly erroneous based on the record.

Mr. Dickerson next challenges the application of the bodily-injury enhancement to Group 5, which corresponds to the robbery of victim H.G. The robbery of H.G. presents an even stronger case for bodily injury. H.G. told the responding officer that she had red cuts on her chest after Mr. Dickerson tased

21

and punched her. In a phone interview one year later, H.G. recounted the attack to the probation officer and stated that she sustained marks on her neck from the taser that were sore for a month and experienced two weeks of soreness in her chest from being punched. The evidence thus supports the district court's finding that the injuries were visible (red cuts) and lasting (neck soreness for a month and chest soreness for two weeks). Accordingly, the district court did not clearly err in applying the bodily-injury enhancement to Group 5.

Mr. Dickerson also contests the application of the bodily-injury enhancement to Group 6, which corresponds to the robbery of D.G. Like H.G., D.G. also sustained cuts from being tased by Mr. Dickerson. The responding officer observed two cuts on D.G.'s arm where he was tased. According to the PSR, the video recording from the bank corroborates the use of the taser and D.G.'s reaction of "jumping [while] clutching his chest." R., Vol. II, at 9. There was no follow-up interview with D.G. and there is nothing in the record that explicitly addresses the length of D.G.'s injuries.

Nonetheless, we cannot say that the district court clearly erred in finding that D.G.'s injuries constitute bodily injury. The two cuts on D.G.'s wrist were visible injuries, obvious to the responding officers. Moreover, we consider relevant the video evidence of D.G. jumping and clutching his chest in response to the taser. Although we have no evidence that the taser caused D.G. lasting pain, it would not be clearly erroneous for the district court to infer that the injury

22

to D.G. was painful based on his reaction to the taser in the video recording. Focusing only on D.G.'s reaction to the pain of the taser, not Mr. Dickerson's act of tasing D.G., we conclude that the evidence supports a finding that D.G. suffered a "painful and obvious" injury sufficient for bodily injury. *See* U.S.S.G. § 1B1.1, cmt. n.1(B). The district court could reasonably find that such a physical response, in conjunction with visible cuts, rises to the level of bodily injury under the Guidelines.

Finally, Mr. Dickerson challenges the application of the bodily-injury enhancement to Group 7, which corresponds to the robbery of J.H. J.H. told responding officers that he sustained a seven-centimeter red mark on his upper chest where Mr. Dickerson grabbed him and ripped his shirt during the attack. Mr. Dickerson then tased J.H. and struck him several times. In *Mejia-Canales*, we held that a "red mark—without any reported swelling, bleeding, or bruising . . . is not, in and of itself, necessarily painful or obvious" and held that the district court committed clear error when it applied the bodily injury enhancement based on such a red mark. *Id.* at 1283. However, in *Brown*, 200 F.3d at 709, we noted that "[v]isible injuries such as . . . redness . . . are sufficient to constitute 'bodily injury.'"

Here, J.H. experienced more than a mere red mark; J.H. also experienced the shock of a taser. Focusing only on the victim's injury, it would not have been clearly erroneous to infer that a victim who experienced the shock of a taser

23

sustained a painful injury and that the red mark is some additional evidence of an obvious injury. We therefore conclude that the district court's finding that J.H. suffered bodily injury is "plausible in light of the record." *See United States v. Uscanga-Mora*, 562 F.3d 1289, 1296 (10th Cir. 2009) (quoting *United States v. Spears*, 197 F.3d 465, 469 (10th Cir. 1999)).

In sum, we conclude that the district court did not clearly err in applying the bodily-injury enhancement.

## c

We next turn to Mr. Dickerson's argument that the district court erred in applying the U.S.S.G. § 2B3.1(b)(4)(B) enhancement for physical restraint of the victim to Group 2, which corresponds to the robbery of victim C.P. Under § 2B3.1(b)(4)(B) a two-level enhancement applies "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." The Guidelines define "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up."[4] U.S.S.G. § 1B1.1, cmt. n.1(K).

"'[R]estraint' . . . mean[s] the defendant's conduct must hold the victim

---

[4]    "By use of the words 'such as,' it is apparent that 'being tied, bound, or locked up' are listed by way of example rather than limitation." *United States v. Roberts*, 898 F.2d 1465, 1470 (10th Cir. 1990) (quoting *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir. 1989)); *accord United States v. Harris*, 271 F. App'x 723, 726 (10th Cir. 2008).

back from some action, procedure, or course, prevent the victim from doing something, or otherwise keep the victim within bounds or under control." *United States v. Checora*, 175 F.3d 782, 791 (10th Cir. 1999) (holding that physical restraint occurred where defendant "tackled [victim] to the ground to prevent his escape"). "The fact [that] the restraint of [the victim] was brief does not" foreclose a finding of physical restraint. *Id.* "[T]he 'Guidelines do not distinguish between long- and short-term restraint, and neither will we.'" *Id.* (quoting *United States v. Foppe*, 993 F.2d 1444, 1452 (9th Cir. 1993)).

The district court adopted the PSR's recommendation to apply a two-level enhancement for physical restraint of victim C.P. The PSR stated that C.P. told the responding officers that Mr. Dickerson "pinned" her "to the ground . . . with his knees in her back and demanded she give him the money." R., Vol. II, at 5. C.P. complied and Mr. Dickerson fled the scene. *Id.* According to the PSR, the video recordings corroborated C.P.'s story that Mr. Dickerson threw her to the ground "in what appears to be a headlock. As C.P. hits the ground, [Mr. Dickerson] stands up on top of her and violently rips the cash bag from her possession." *Id.* at 6.

According to Mr. Dickerson he "did not pin C.P. on the ground"; rather, "they both fell to the ground after a brief scuffle as he tried to take the money from her." Aplt.'s Opening Br. at 27. In Mr. Dickerson's view, this does not rise to the level of physical restraint. But even Mr. Dickerson's version of the

25

facts—under which he and C.P. fell to the ground in a struggle for possession of the money—could be construed as Mr. Dickerson "hold[ing] the victim back from some action," whether it be escape or maintaining possession of the money, and "keep[ing] the victim . . . under [his] control" to effectuate the robbery. *See Checora*, 175 F.3d at 791. And, Mr. Dickerson cites no legal authority to the contrary. His challenge focuses solely on his disagreement with the PSR's characterization of his physical altercation with C.P. Even if we assume that his characterization is plausible, the PSR's certainly is as well. And, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Therefore, the district court's endorsement of the PSR's view in applying the physical-restraint enhancement cannot be deemed clearly erroneous.

**d**

We next turn to Mr. Dickerson's claim that the district court erred in applying the enhancement for loss exceeding $10,000 under U.S.S.G. § 2B3.1(b)(7) to Group 2, which corresponds to the robbery of victim C.P. The PSR states that when Mr. Dickerson robbed C.P., he escaped with $3,662.60 in cash and $35,885.49 in checks. According to the PSR, "the bulk of [One Main Financial's] loss was in the form of checks or money orders, which their customers either stopped payment on or reissued." R., Vol. II, at 11. As a result, the actual loss to One Main Financial for the purposes of restitution, which One

Main Financial opted not to pursue, would be the value of the cash—that is, $3,662.60.

Mr. Dickerson argues that the sentencing enhancement should not apply because the actual loss to One Main Financial was only $3,662.60, an amount that is well below $10,000. In Mr. Dickerson's view, the relevant total for purposes of this enhancement is the actual loss to the victim and, because One Main Financial's customers stopped payment on or reissued the stolen checks or money orders, the value of the checks and money orders cannot count towards the "loss" for the sentencing enhancement.

The Guidelines define "loss" as "the value of the property taken, damaged, or destroyed." U.S.S.G. § 2B3.1 cmt. n.3. This definition—"the value of the property taken"—begs the question: at what point in time do we calculate the value of the loss? When Mr. Dickerson approached C.P., C.P. possessed cash and checks worth $39,548.09 to One Main Financial. When Mr. Dickerson took possession of C.P.'s money bag, he escaped with the entire sum of money. At some point in the future, the stolen checks and money orders in Mr. Dickerson's possession became virtually worthless because customers stopped payment on them. The question, then, is whether we calculate "the value of the property" taken at the time of dispossession or after customers have canceled the checks and money orders.

Other circuits have held that for purposes of determining the amount of the

loss under § 2B3.1(b)(7), the Guidelines do not limit "loss" to permanent deprivation of property. *See United States v. McCarty*, 35 F.3d 1349, 1361 (5th Cir. 1994) (holding that the relevant amount is the amount taken, not the amount taken less the amount recovered); *United States v. Napier*, 21 F.3d 354, 355 (9th Cir. 1994) (holding that the relevant amount was the amount taken prior to apprehension of the defendant); *United States v. Cruz-Santiago*, 12 F.3d 1, 3 (1st Cir. 1993) (holding that the loss calculation under § 2B3.1(b)(7) is not limited to permanent deprivations); *United States v. Parker*, 903 F.2d 91, 105 (2d Cir. 1990) (holding that the amount of loss is calculated irrespective of whether the property is immediately thereafter recovered).

Guided by the reasoning of these cases from our sister circuits, we hold that the relevant value of the loss for purposes of the § 2B3.1(b)(7) enhancement is the value of the stolen property at the time of dispossession. To hold otherwise would allow Mr. Dickerson to benefit from the fact that One Main Financial was able to mitigate its losses. The victim's ultimate actual loss resulting from the robbery is a question for restitution, not for this sentencing enhancement. Therefore, we conclude that the district court did not clearly err in applying the sentencing enhancement for loss exceeding $10,000 under § 2B3.1(b)(7).

**e**

Finally, we turn to Mr. Dickerson's claim that the record contains insufficient evidence to support the district court's calculation of actual loss for

28

purposes of restitution in the amount of $8,424.60. The PSR recommended a restitution amount of $8,424.60. The amount included losses sustained by three businesses—Loan Max ($3,931), Church's Chicken ($2,347.60), Sonic ($2,091)—and victim J.H. ($55). The district court adopted the PSR's findings and, pursuant to the Mandatory Victims Restitution Act ("MVRA"), *see* 18 U.S.C.A. § 3663A, ordered restitution in the amount of $8,424.60—the sum of the aforementioned losses. Mr. Dickerson now argues that the government failed to prove the amounts of actual loss sustained by Loan Max, Church's Chicken, and Sonic.

**i**

We first address the parties' dispute as to which standard of review applies to each of the components of the restitution amount. "We review the district court's application of the MVRA de novo, review its factual findings for clear error, and review the amount of the restitution awarded for abuse of discretion." *United States v. Gallant*, 537 F.3d 1202, 1247 (10th Cir. 2008). Where a defendant fails to challenge a restitution amount in the district court, "our review is for plain error." *United States v. Burns*, 800 F.3d 1258, 1261 (10th Cir. 2015). Mr. Dickerson concedes that he failed to object in the district court to the PSR's calculation of Sonic's actual loss and thus that issue is subject to plain-error review. The parties dispute which standard of review applies to the restitution amounts for Loan Max and Church's Chicken.

Mr. Dickerson argues that he preserved his challenges to the restitution amounts for Loan Max and Church's Chicken in his sentencing memorandum by objecting to paragraphs 43 and 45 of the PSR. The relevant portion of his sentencing memorandum states:

> Paragraph 43 - The loss amount of $3,931.00 in this paragraph differs from the loss of $3,700 which was reported to the police as reflected in Paragraph 15.
>
> Paragraph 45 - The loss amount of $2,347.60 listed in this paragraph differs from the loss amount $2,310 which was reported to the police as reflected in paragraph 17.

R., Vol. I, at 34.

The government argues that plain-error review applies to all three restitution amounts because Mr. Dickerson failed to object to paragraph 202 of the PSR, in which the probation officer computed the total amount of restitution as $8,424.60. The government maintains that Mr. Dickerson's "objection to the amount of loss sustained by Loan Max and Church's Chicken was not a challenge to restitution, but rather a challenge to adjustments under U.S.S.G. § 2B3.1(b)(7)." *Id.* at 30–31.

We need not resolve the parties' dispute. Mr. Dickerson makes essentially the same, overarching argument regarding all three restitution amounts. And, as we explain below, his argument fails as to all three under the more rigorous clear-error—as opposed to plain-error—standard. Consequently, for simplicity's sake, we review the district court's calculation of the actual losses suffered by Loan

30

Max, Church's Chicken, and Sonic for clear error and ultimately reject Mr. Dickerson's challenges.

**ii**

The MVRA provides that the district "court shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). "[A]n order of restitution imposed pursuant to the MVRA must be based on the 'full amount of each victim's losses as determined by the court . . . .'" *United States v. Ferdman*, 779 F.3d 1129, 1132 (10th Cir. 2015) (quoting 18 U.S.C. § 3664(f)(1)(A)). "[T]he MVRA does not require a court to calculate a victim's actual loss with 'exact' precision." *Id.* But, "the MVRA undoubtedly 'require[s] *some* precision when calculating restitution. Speculation and rough justice are not permitted.'" *Id.* (quoting *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013) (emphasis added)).

"The burden of demonstrating the amount of loss sustained by the victim as a result of the offense shall be on . . . the Government." 18 U.S.C. § 3664(e). The PSR must contain "information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim . . . ." *Id.* § 3664(a).

"Any dispute as to the proper amount . . . of restitution shall be resolved by the court by the preponderance of the evidence." *Id.* § 3664(e). "A district court

31

'may resolve restitution uncertainties with a view towards achieving fairness to the victim so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss.'" *Ferdman*, 779 F.3d at 1133 (alteration omitted) (quoting *Gallant*, 537 F.3d at 1252).

### iii

We conclude that the district court did not clearly err in adopting the PSR's calculation of actual loss amounts for Loan Max, Church's Chicken, or Sonic. The PSR included estimates of the losses as reported by the individual victims of the crime to the responding officers. The probation officer then conducted follow-up interviews with each victim employer business to confirm the restitution amounts. Mr. Dickerson objected that the victims' loss estimates made to the responding officers immediately after the robbery differed from the amounts that the businesses provided in the follow-up interviews with the probation officer. The probation officer responded to Mr. Dickerson's objections in the addendum to the PSR, explaining that any discrepancy was a result of the fact that the victim gave an approximation at the scene of the crime and that the businesses were later able to provide a more accurate accounting of actual loss.

On appeal, Mr. Dickerson essentially makes the same argument for all three restitution amounts. He argues that we must reverse the district court's order because the "PSR supplied no supporting documentation for the recommended restitution amounts and did not identify any individual supplying information on

32

loss amounts or explain how those loss amounts were determined." Aplt.'s Opening Br. at 37. But the caselaw Mr. Dickerson relies on to make this argument is inapplicable here.

Mr. Dickerson chiefly relies on *Ferdman*, a case in which this court reversed a restitution award because insufficient evidence was submitted to the district court. 779 F.3d at 1141. The defendant in *Ferdman* illegally procured cellular telephones from Sprint stores. *Id.* at 1131. The district court ordered the defendant to pay Sprint $48,715.59 in restitution based entirely on an "unverified or unsworn . . . letter" that Sprint's regional manager of investigation submitted to the probation office. *Id.* at 1133. The letter "purport[ed] to list the amount of the phone losses Sprint sustained" during the relevant period. *Id.* It explained that "[t]he phone losses are the retail unsubsidized price of these phones," and included estimates for investigative and shipping costs that allegedly flowed from the defendant's conduct. *Id.* at 1134. On appeal, we vacated the restitution order for lack of evidence. *Id.* at 1141. We held that where a district court relies on "lost sales and accompanying profits to calculate the amount of the victim's actual loss under the MVRA . . . . in the case of fungible or readily replaceable goods . . . the Government must present more than a claim that but for a defendant's theft, the victim may have made additional sales[;] . . . the Government must present at least some evidence . . . from which the court could reasonably infer lost sales." *Id.* Moreover, we also found that Sprint's estimates

33

for shipping and investigative costs were insufficient to support a restitution order. *Id.* at 1140.

But the facts in this case are different from those in *Ferdman*. First, it is easier to calculate the loss for the things that Dickerson stole—cash and checks—than for fungible assets like cell phones. To calculate the loss of fungible assets, we usually need to consider lost sales and profits. But to calculate the loss of cash and checks, we can simply add up the total amount stolen. Second, there was more evidence supporting the restitution award in this case than there was in *Ferdman*. The responding officers received estimates from the individual victims at the time of the robberies, and the probation officer verified similar totals with the victim employer businesses when preparing the PSR. And third, the district court's restitution calculation was not based on "estimates" from the victims regarding any vague expenses such as "shipping" or "investigative" costs as in *Ferdman*. Here, the total restitution amount was based only on the value of the cash and checks taken from the victims.

Mr. Dickerson also relies on *United States v. Smith*, 156 F.3d 1046 (10th Cir. 1998). There the defendant stole guns from a store and the district court ordered restitution in the amount of $1,209.98 "to cover the cost of both guns stolen from the sporting goods store." *Id.* at 1057. We reversed the district court's restitution order because the government failed to "present evidence at the hearing concerning the appropriate amount of restitution." *Id.* We explained that

34

"[a] restitution order entered without proof of loss is clearly erroneous." *Id.* Mr. Dickerson argues that *Smith* requires us to reverse the restitution order here because the government presented no evidence in support of the restitution order at sentencing. But Mr. Dickerson ignores other differences between this case and *Smith.* The stolen property in *Smith*—like the stolen property in *Ferdman*—was a fungible asset; here, the stolen goods were cash and checks. And, as we pointed out above, it is simpler to calculate the face value of cash and checks than to calculate the value of fungible assets.

Moreover, the law does not require the government to make a showing at the restitution hearing where the facts underlying the restitution amounts are undisputed. *See Tindall*, 519 F.3d at 1061–62 (holding that a sentencing court may "'accept any undisputed portion of the presentence report as a finding of fact.'" (quoting Fed. R. Crim. P. 32(i)(3)(A))). Mr. Dickerson's only objection in the district court related to the minor discrepancies between the victims' initial approximations and later clarifications of loss. Mr. Dickerson never pointed to evidence contradicting the actual loss amounts listed in the PSR. We therefore conclude that the present record contains sufficient, undisputed evidence of the actual losses underlying the total restitution amount.

In sum, Mr. Dickerson fails to show that the district court's factual findings in support of its restitution award were clearly erroneous, or that the court abused its discretion in setting the restitution amount at $8,424.60.

35

**3**

We next turn to Mr. Dickerson's third procedural challenge. He argues that his sentence was procedurally unreasonable because the district court failed to make the factual findings necessary for his sentence or responsive to his objections. Specifically, Mr. Dickerson argues that remand is necessary because the district court failed to "find a single fact pertaining to Mr. Dickerson or the offenses for which he was sentenced." Aplt.'s Opening Br. at 42. He claims that his "objections to the PSR clearly triggered the court's fact finding obligation under Federal Rule of Criminal Procedure 32." *Id.* at 45. We disagree.

Rule 32(i)(3)(A) "allows the sentencing court to 'accept any undisputed portion of the presentence report as a finding of fact.'" *Tindall*, 519 F.3d at 1061–62 (quoting Fed. R. Crim. P. 32(i)(3)(A)). "But the court 'must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.'" *Id.* (quoting Fed. R. Civ. P. 32(i)(3)(B)). "We review de novo the district court's compliance with the Federal Rules of Criminal Procedure." *United States v. Cereceres-Zavala*, 499 F.3d 1211, 1214 (10th Cir. 2007).

"[T]o invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make specific allegations of factual inaccuracy." *Id.* at 1215–16 (quoting *United States v. Rodriguez-Delma*, 456 F.3d 1246, 1253 (10th

36

Cir. 2006)).  "[A] defendant's attempt to controvert legal determinations—or even ultimate factual conclusions—drawn in a PSR 'does not implicate' the district court's fact-finding obligations under Rule 32."  *Id.* at 1214 (quoting *United States v. Tovar*, 27 F.3d 497, 500 (10th Cir 1994)).  "Arguments that 'challenge[] the district court's application of the guidelines to the facts and not the facts themselves' do not trigger any obligation on the part of the district court to make specific findings."  *Rodriguez-Delma*, 456 F.3d at 1253 (quoting *United States v. Windle*, 74 F.3d 997, 1002 (10th Cir. 1996)); *see also United States v. Pena-Hermosillo*, 522 F.3d 1108, 1118–19 (10th Cir. 2008) (Ebel, J., concurring) ("Although [the defendant] clearly challenged the application of two guidelines offense-level enhancements . . . he never disputed any of the historical facts contained in the [PSR] . . . .  Therefore, Rule 32(i)(3)(B)'s requirement that the district court resolve factual disputes concerning historical facts was never triggered.").

On appeal, Mr. Dickerson does not identify any specific, contested facts that the district court failed to address and that should have triggered a Rule 32 hearing.  Rather, Mr. Dickerson only generally refers to the contested sentencing enhancements and the total restitution amount.  He argues:

> [T]he district judge adopted the PSR findings and imposed the bodily injury enhancements, the enhancement for physical restraint of victim C.P., the dangerous weapon enchantments, the enhancement for loss above $10,000 and the restitution orders-all without acknowledging Mr. Dickerson's numerous objections and

without making any findings or comments about them. There is no indication in the record that the district court considered the facts underlying the enhancements or the objections Mr. Dickerson raised.

Aplt.'s Opening Br. at 47. To achieve reversal on appeal, Mr. Dickerson needed to point us to the "specific allegations of factual inaccuracy" that he made in the district court that would have triggered the "district court's Rule 32 fact-finding obligation." *Cereceres-Zavala*, 499 F.3d at 1215–16 (quoting *Rodriguez-Delma*, 456 F.3d at 1253). But Mr. Dickerson has not carried his burden. We therefore reject Mr. Dickerson's Rule 32 challenge.

**4**

Finally, we turn to Mr. Dickerson's argument that "[t]he record does not support the conclusion that the district court appropriately considered the statutory factors in [18 U.S.C.] § 3553(a)."[5] Aplt.'s Opening Br. at 53. He argues that "the record is insufficient to permit this Court to properly" review the district court's consideration of the § 3553(a) factors. *Id.* Indeed, the failure of a district court to consider a § 3553(a) sentencing factor is reversible procedural error. *See Gall*, 552 U.S. at 51. However, Mr. Dickerson must direct this court to

_____

[5] Mr. Dickerson includes this argument in his substantive-reasonableness challenge. However, a district court's failure to consider a sentencing factor set forth in 18 U.S.C. § 3553(a) is a procedural error. *See Gall*, 552 U.S. at 51 (classifying as a procedural error a district court's "fail[ure] to consider the § 3553(a) factors"). Therefore, we address his challenge within our discussion of procedural reasonableness.

at least one sentencing factor that, if considered by the district court, would have altered the district court's calculation of his sentence. Because he fails to do so, Mr. Dickerson gives us no basis on which to reverse the district court.

In sum, we conclude that Mr. Dickerson has not identified a significant procedural error worthy of reversal on appeal.

## C

Now that we have assured ourselves that the district court's sentence is procedurally reasonable, we turn to Mr. Dickerson's substantive challenges. Specifically, Mr. Dickerson argues that his sentence was substantively unreasonable because (1) the procedural defects in his sentence implicate its substantive reasonableness, and (2) the court-found facts more than doubled his Guidelines range. Concluding that Mr. Dickerson has identified no substantive error, we affirm the district court's sentence.

## 1

As we mentioned *supra*, our "[r]eview for substantive reasonableness focuses on 'whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a).'" *Friedman*, 554 F.3d at 1307 (quoting *Alapizco-Valenzuela*, 546 F.3d at 1215). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to

39

promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for—(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement[;] . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"When reviewing a sentence for substantive reasonableness, this court employs the abuse-of-discretion standard, a standard requiring 'substantial deference to district courts.'" *Friedman*, 554 F.3d at 1307 (citation omitted) (quoting *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008)). "A district court abuses its discretion when it renders a judgment that is 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (quoting *United States v. Byrne*, 171 F.3d 1231, 1235–36 (10th Cir. 2008)). "That we might reasonably have concluded a different sentence was appropriate is insufficient to justify reversal of the district court." *Friedman*, 554 F.3d at 1307–08 (alterations omitted) (quoting *Munoz-Nava*, 524 F.3d at 1146).

Ordinarily, "if a sentence falls within the correct Guidelines range, we

40

presume it is reasonable." *United States v. Delgado-Montoya*, --- F. App'x ----, 2016 WL 6211800, at \*6 (10th Cir. Oct. 25, 2016); *see United States v. Craig*, 808 F.3d 1249, 1263 (10th Cir. 2015) (noting that "we presume Defendant's within-Guidelines sentence is substantively reasonable"); *see also United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006) ("If . . . the district court properly considers the relevant Guidelines range and sentences the defendant within that range, the sentence is presumptively reasonable. The defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a).").

**2**

At the outset, we address and reject Mr. Dickerson's contention that we should eschew the presumption of reasonableness on this record. It would ordinarily apply because the district court imposed a within-Guidelines sentence on Mr. Dickerson. *See, e.g.*, *Kristl*, 437 F.3d at 1055. Specifically, the district court calculated a Guidelines range of 121 to 151 months and imposed a sentence within that range—121 months.

Mr. Dickerson contends that we "cannot apply the presumption of reasonableness that is accorded to a properly calculated guideline sentence because [we] cannot determine, in light of the inadequate record, that Mr. Dickerson's sentence was properly calculated." Aplt.'s Opening Br. at 53. He adds that "[t]he court arrived at the guideline range by applying enhancements

unsupported by the evidence." *Id.* In other words, Mr. Dickerson asserts that we cannot apply a presumption of reasonableness because (1) his sentence may have been improperly calculated, and (2) there was insufficient evidence to support the sentencing enhancements imposed by the district court. We are unpersuaded.

First, in arguing against the presumption, Mr. Dickerson alleges only procedural defects with his sentence. *See Sanchez-Leon*, 764 F.3d at 1261 ("Our review of procedural reasonableness 'focuses on the manner in which the sentence was calculated.'" (quoting *Masek*, 588 F.3d at 1290)). But we considered and rejected those defects *supra*. Second, Mr. Dickerson offers no legal support for the proposition that procedural errors have any bearing on whether we may properly apply a presumption of reasonableness at the substantive-reasonableness stage of our review. Indeed, such a proposition would be at odds with our reasonableness framework. We consider substantive reasonableness only *after* we have addressed and rejected challenges to procedural reasonableness. *See Lucero*, 747 F.3d at 1246 ("We 'must first ensure that the district court committed no significant procedural error . . . .' If the district court's decision is 'procedurally sound,' we 'then consider the substantive reasonableness of the sentence imposed.'" (citation omitted) (quoting *Gall*, 552 U.S. at 51)). If the alleged procedural errors Mr. Dickerson identifies as the basis for his anti-presumption argument were in fact significant errors (i.e., non-harmless errors), we would have reversed on procedural grounds, without reaching the substantive-

42

reasonableness question presently before us. *See, e.g.*, *Sanchez-Leon*, 764 F.3d at 1261 ("If we find a procedural error, 'resentencing is required only if the error was not harmless.' (quoting *Cerno*, 529 F.3d at 939)); *United States v. Kristl*, 437 F.3d 1050, 1054–55 (10th Cir. 2006) ("A different approach, however, is warranted when the district court errs in applying the Guidelines. . . . In that situation, we must remand—without reaching the question of [substantive] reasonableness—unless the error is harmless." (citations omitted)). Thus, consistent with our precedent, we apply the presumption of reasonableness to Mr. Dickerson's within-Guidelines sentence.

**3**

The onus is on Mr. Dickerson to "rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a)." *Kristl*, 437 F.3d at 1055. Mr. Dickerson has made no attempt to carry this burden. He has not identified a single § 3553(a) factor that, if properly considered in his case, would merit a lower sentence than the district court imposed on him. Mr. Dickerson argues only that "[t]he record does not support the conclusion that the district court appropriately considered the statutory factors in § 3553(a)." Aplt.'s Opening Br. at 53. But Mr. Dickerson's brief leaves to the imagination which § 3553(a) factors were not considered, how this is evident from the district court's sentence, and which specific factors would have merited a lower sentence. These questions are essential to our substantive review and

without answers to them from Mr. Dickerson, we have no basis on which to reverse the district court.

Instead of making a substantive-reasonableness argument based on the § 3553(a) factors, Mr. Dickerson argues that his sentence was substantively unreasonable because (1) it has procedural defects, and (2) because court-found facts significantly increased his sentence. Concluding that neither argument is a basis for finding his sentence substantively unreasonable, we reject Mr. Dickerson's substantive challenge.

### a

Mr. Dickerson first argues that his sentence was substantively unreasonable because of its "serious procedural defects." Aplt.'s Opening Br. at 52. Specifically, he argues that his sentence was "substantively unreasonable because the district court imposed . . . numerous enhancements that substantially increased Mr. Dickerson's sentence without sufficient evidence or essential findings." *Id.* Moreover, he seems to argue that the district court failed to explain the reasons for its sentence.

But these are squarely procedural arguments. *See Gall*, 552 U.S. at 51 (categorizing as procedural errors "improperly calculating[] the Guidelines range" and "failing to adequately explain the chosen sentence."). And Mr. Dickerson has identified no legal authority for the proposition that procedural error is a basis for finding a sentence substantively unreasonable. We again emphasize our process

44

for analyzing reasonableness. We "first ensure that the district court committed no significant procedural error" that *independently* warrants reversal. *Id*. If there was no procedural error, we "then consider the substantive reasonableness of the sentence imposed." *Id.* If Mr. Dickerson's sentence was procedurally unreasonable, we would not have reached the substantive-reasonableness inquiry.

Moreover, Mr. Dickerson argues that "the record is insufficient to permit this Court to properly conduct substantive review at all." Aplt.'s Opening Br. at 53. He adds that the "district court did not see or hear any evidence, did not make any credibility determinations, and did not acquire 'full knowledge' of the pertinent facts." *Id.* at 54 (quoting *Gall*, 552 U.S. at 51). However, the record—no matter how inadequate—does not excuse Mr. Dickerson's failure to make a substantive-reasonableness argument. Put simply, Mr. Dickerson's argument regarding the sufficiency of the record misapprehends his burden on appeal. No matter what the district court has said, or failed to say, he must point us to at least one § 3553(a) factor that would have counseled in favor a lower sentence.

**b**

Finally, Mr. Dickerson argues that his sentence is substantively unreasonable because court-found facts more than doubled his Guidelines range. According to Mr. Dickerson, the facts underlying the disputed sentencing enhancements needed to be either admitted by him or submitted to a jury to

45

satisfy the Sixth Amendment, as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that any fact increasing a sentence beyond the statutory maximum must be submitted to the jury), and *Alleyne v. United States*, --- U.S. ----, 133 S. Ct. 2151, 2163–64 (2013) (holding that any fact increasing a mandatory-minimum sentence must be submitted to the jury).  He therefore argues that we must find his sentence substantively unreasonable.

Mr. Dickerson's reliance on *Apprendi* and *Alleyne* is misplaced.  He was not subject to a mandatory-minimum sentence nor sentenced beyond the statutory maximum for his robbery-related convictions.  The statutory maximum for Mr. Dickerson's offenses is twenty years (240 months), *see* 18 U.S.C. § 1951(a), and the district court sentenced Mr. Dickerson to 121 months, well beneath the statutory maximum.  And there is no mandatory-minimum sentence prescribed for his offense.  The court's factual findings simply provided a basis for the court's calculation of Mr. Dickerson's Guidelines sentence, including his sentencing enhancements.  Accordingly, *Apprendi* and *Alleyne* are inapposite.  *See, e.g.*, *United States v. Zar*, 790 F.3d 1036, 1054–55 (10th Cir. 2015) ("The defendants' reliance on *Apprendi* and *Alleyne* is misplaced as none of the defendants were subject to mandatory minimum sentences or sentenced beyond the statutory maximums for their convictions."); *United States v. Cassius*, 777 F.3d 1093, 1097 (10th Cir. 2015) ("[N]othing in the record indicates the district court increased Defendant's statutory sentencing range or otherwise altered his legally prescribed

punishment; rather, by all indications the court used its larger drug quantity finding solely as a sentencing factor to help determine Defendant's sentence *within the prescribed statutory range*. We find no error in this procedure under *Alleyne*." (emphasis added)), *cert. denied*, 135 S. Ct. 2909 (2015); *United States v. Fredette*, 315 F.3d 1235, 1245 (10th Cir. 2003) ("*Apprendi* does not apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum.")

In sum, Mr. Dickerson's failure to argue that his sentence was substantively unreasonable in light of the § 3553(a) factors is fatal to his substantive challenge. He has given us no reason to bypass the "due deference" we give to "the district court's decision that the § 3553(a)" factors justify the sentence imposed. *See Friedman*, 554 F.3d at 1307 (quoting *Munoz-Nova*, 524 F.3d at 1146).

**IV**

With the exception of Mr. Dickerson's challenge regarding the restitution amount specified in the written judgment, we **AFFIRM** Mr. Dickerson's sentence. As to that restitution amount, we **REVERSE** and **REMAND** with instructions for

the district court to enter an amended judgment ordering restitution in the amount of $8,424.60.

Entered for the Court


JEROME A. HOLMES
Circuit Judge